IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA

| | |
|---|---|
| **Thomas Roehrman,** | : |
| Plaintiff, | : Civil Action No. 1:23-cv-00268 |
| v. | : |
| **Protected.net Group Limited d/b/a Total AV,** | : **Jury Trial Demanded** |
| Defendant. | : |

# COMPLAINT

**Thomas Roehrman** ("Plaintiff"), by and through his attorneys, **Kimmel & Silverman, P.C.**, alleges the following against **Protected.net Group Limited d/b/a Total AV** ("Total AV"):

## INTRODUCTION

1. Plaintiff's Complaint is based on the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §227 and Indiana's Deceptive Consumer Sales Act ("DCSA") under I.C. 24-5-0.5.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over the TCPA claims in this action under 28 U.S.C. § 1331, which grants this court original jurisdiction of all civil actions arising under the laws of the United States. See Mims v. Arrow Fin. Servs., LLC, 565 U.S. 368, 386-87 (2012) (confirming that 28 U.S.C. § 1331 grants the United States district courts federal-question subject-matter jurisdiction to hear private civil suits under the TCPA).

3. This Court has personal jurisdiction over Defendant as it regularly and systematically conducts business in the State of Indiana.

1

4. Furthermore, Defendant sent text messages to Plaintiff at his "317" area code, associated with the Indianapolis region within the State of Indiana.

5. Accordingly, Defendant knowingly and purposefully availed itself to the State of Indiana and sought the business of an Indiana-based consumer by placing text messages to his "317" area code telephone number.

6. Plaintiff resided within this District at all times relevant hereto. Plaintiff received the calls at issue and experienced harm within this District.

7. A substantial portion of the acts and omissions described herein occurred within this District.

8. Supplemental jurisdiction exists for Plaintiff's state law claim pursuant to 28 U.S.C. §1367.

9. Accordingly, personal jurisdiction exists and venue is proper under 28 U.S.C. § 1391(b)(1) and (2).

## PARTIES

10. Plaintiff is a natural person residing at 9971 Nicole Lane, Brownsburg, IN 46112.

11. Plaintiff is a "person" as that term is defined by 47 U.S.C. § 153(39).

12. Total AV is a United Kingdom based business entity with an otherwise valid principal office at 1501 Main Street, Suite 201, Venice, California, 90291.

13. Defendant is a "person" as that term is defined by 47 U.S.C. § 153(39).

14. Defendant acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and/or insurers.

## **FACTUAL ALLEGATIONS**

15. At all times relevant hereto, Plaintiff, Thomas Roehrman owned a cell phone, the number for which is (317) XXX-7298.

16. At all times relevant hereto, Mr. Roehrman used his cellular telephone primarily for residential purposes such as talking with friends and family, ordering food and playing video games.

17. Roehrman registered his cell phone number on the Federal Do Not Call Registry in or around April 04, 2008 in order to obtain solitude from invasive and harassing telemarketing calls.

18. Defendant Total AV is an online cyber security company that engages in telemarketing to solicit business for antivirus software products.

19. On or around September 23, 2020 Total AV began to place a series of solicitation text messages to Plaintiff in order to sell him antivirus software.

20. Prior to receiving text messages from Defendant, Plaintiff never sought information about the products that Defendant sought to sell to Plaintiff, nor did Plaintiff seek any information about antivirus software prior to receiving the communications from Defendant.

21. The text messages were not sent for "emergency purposes," but rather for telemarketing purposes.

22. Despite registration on the Do Not Call Registry, Defendant placed text messages to Mr. Roehrman on numerous occasions attempting to sell Plaintiff antivirus software that Plaintiff had no interest in.

23. In total, Defendant sent at least thirteen (13) text messages to Plaintiff- many of which were sent at obscene hours of the night and early morning.

24. An inexhaustive list of those text messages to Plaintiff's personal phone ending in 7298 is below:

- September 23, 2020 at 7:13 am
- September 25, 2020 at 6:05 am
- September 28, 2020 at 6:05 am
- May 2, 2021 at 1:49 pm
- May 9, 2021 at 6:24 am
- May 9, 2021 at 6:08 am
- May 12, 2021 at 5:47 am
- May 15, 2021 at 7:34 pm
- May 17, 2021 at 6:47 am
- May 22, 2021 at 3:30 am
- May 22, 2021 at 1:35 am
- June 6, 2021 at 6:40 am
- June 6, 2021 at 5:15 pm

25. Upon information and belief, Mr. Roehrman received additional text messages from Defendant not included in the above list.

26. After receiving the first text message from Defendant on September 23, 2020, Plaintiff registered an account with Defendant, for investigative purposes only, to confirm the company behind the unwanted text.

27. Plaintiff responded to Defendant's September 25, 2020 text message with "STOP", revoking any purported consent Defendant had and ending any purported existing business relationship.

28. At least one of the text messages sent by Defendant deceptively notified Plaintiff that "[a]ccording to our research, you are amongst the affected of a security breach. We highly advise you scan your mobile now".

29. Once Plaintiff pressed the link in the message, he was brought to a webpage that indicated that Plaintiff's device was "infected with (8) adware viruses!" despite Plaintiff's device having no viruses and having displayed no exhibits of defect.

30. The page provided a link to "Fix now!"

31. Upon clicking the "Fix now" button, Plaintiff was direct to Total AV's webpage.

32. Another of Defendant's text message deceptively informed Plaintiff that Plaintiff's device was going to be locked and that Plaintiff needed to "clear spam messages."

33. Once Plaintiff pressed the link in the message, he was brought to a webpage that indicated that Plaintiff's device is currently infected with a Trojan virus despite Plaintiff's device having no viruses.

34. The page then redirected to Total AV's webpage to sign up for its services, that Plaintiff had not expressed any interest for.

35. Accordingly, Defendant has benefitted from the deceptive and violative marketing practices of its partners.

36. Frustrated from receiving the unwanted text messages with the deceptive advertisements, Plaintiff replied "STOP" to the unwanted text messages on September 23, 2020, September 25, 2020, September 28, 2020, May 9, 2021, and June 6, 2021.

37. Despite Plaintiff's demand for the text messages to cease, Defendant continued to place unwanted text messages to Plaintiff's cell phone.

38. As a result of the foregoing, Plaintiff experienced frustration, annoyance, irritation and a sense that his privacy has been violated by Defendant.

39. Further, the text messages at obscene hours (including 1:35 and 3:30 am) caused a disruption to Roehrman's sleep.

40. The foregoing acts and omissions were in violation of the TCPA and Indiana's Deceptive Consumer Sales Act.

## COUNT I
## DEFENDANT VIOLATED THE TCPA 47 U.S.C. § 227(c) AND 47 C.F.R. § 64.1200(C)
### (*Federal Do Not Call Registry*)

41. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

42. 47 U.S.C. § 227(c)(5) of the TCPA and its accompanying regulatory code, 64 C.F.R. § 64.1200(c), prohibit any person or entity of initiating any telephone solicitation to a residential telephone subscriber who has registered his or her telephone number on the National Do-Not-Call Registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government. 47 U.S.C. § 227(c).

43. Defendant contacted Plaintiff despite the fact that Plaintiff's telephone number had been registered on the Do Not Call Registry since April 04, 2008.

44. Defendant's acts as described above were done with malicious, intentional, willful, reckless, wanton and negligent disregard for Plaintiff's rights under the law and with the purpose of harassing Plaintiff.

45. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, deceptively and fraudulently and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

46. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages.

## COUNT II
## DEFENDANT VIOLATED THE TCPA
## 47 U.S.C. § 227(c)(2) and 47 C.F.R. § 64.1200(c)(1): Calls Before 8:00 am

47. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

48. The statutory language of the TCPA and its do-not-call rules, delegate rulemaking to the FCC. 47 U.S.C. § 227(c)(1).

49. The FCC's regulations provide in relevant part that "no person or entity shall initiate any telephone solicitation to: Any residential telephone subscriber before the hour of 8 a.m. or after 9 p.m. (local time at the called party's location). 47 C.F.R. § 64.1200(c)(1).

50. Defendant sent text messages and placed calls to Plaintiff that were received after 9:00 pm and before 8:00 am, in violation of the TCPA.

51. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and trebles damages

## COUNT III
## DEFENDANT VIOLATED 47 U.S.C. § 227(c) and CFR § 64.1200(d)
(*Internal Do-Not-Call List*)

52. Plaintiff incorporates the foregoing paragraphs as though the same were set forth at length herein.

53. Section 227(c) of the TCPA prescribes that the FCC shall enact regulations to protect residential telephone subscribers' privacy rights.

54. Through those powers delegated by Congress, the FCC promulgated regulations including CFR 64.1200 which provides in relevant part:

> (d) No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> ***************
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

55. A private right of action exists for failing to maintain meaningful internal do-not-call policies.

56. Roehrman sent numerous text messages to Defendant's agent to "stop", to no avail.

57. Accordingly, it is clear Total AV did not maintain or enforce a meaningful internal do not call policy.

58. Defendant violated Plaintiff's rights under § 227(c)(5) and CFR § 64.1200(d) through the aforementioned acts and omissions.

59. Defendant's violations were knowing and willful.

60. The acts and/or omissions of Defendant were done unfairly, unlawfully, intentionally, and absent bona fide error, lawful right, legal defense, legal justification or legal excuse.

61. As a result of the above violations of the TCPA, Plaintiff has suffered the losses and damages as set forth above entitling Plaintiff to an award of statutory, actual and treble damages.

## COUNT IV
## DEFENDANT VIOLATED THE INDIANA DECEPTIVE CONSUMER SALES ACT
### Indiana Code 24-5-0.5-3 et seq.

62. Plaintiff incorporates the forgoing paragraphs as though the same were set forth at length herein.

8

63. Defendant violated Indiana Code 24-5-0.5-3(a) and (b)(19) by engaging in an unfair, abusive and deceptive practice through its systematic attempts to solicit an antivirus program to Plaintiff.

64. Indiana's DCSA states in relevant part:

A supplier may not commit an unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction. Such an act, omission, or practice by a supplier is a violation of this chapter whether it occurs before, during, or after the transaction. An act, omission, or practice prohibited by this section includes bother implicit and explicit misrepresentation." I.C. 24-5-0.5-3(a).

Without limiting the scope of subsection (a), the following acts, and the following representations as to the subject matter of a consumer transaction, made orally, in writing, or by electronic communication by a supplier are deceptive acts: The violation by a supplier of 47 U.S.C. 227, including any rules or regulations issued under 47 U.S.C. 227." I.C. 24-5-0.5-3(b)(19).

An "incurable deceptive act" means a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead. IC 24-5-0.5-2.

65. Plaintiff is a "person" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(2).

66. Defendant is a "supplier" as defined by the IDCSA, I.C. 24-5-0.5(a)(3).

67. Defendant's solicitation text messages were "consumer transactions" as defined by the IDCSA, I.C. 24-5-0.5-2(a)(1)(C).

68. Defendant engaged in unfair, abusive, and deceptive behavior in its solicitations directed to Plaintiff. Through systematic and frequent solicitation attempts, Defendant has relentlessly contacted Plaintiff, despite Plaintiff's presence on the Do Not Call Registry. Plaintiff continuously demanded that Defendant's solicitation attempts cease. However, Defendant purposefully ignored Plaintiff's demands in an abusive attempt to solicit antivirus products. By continuing to contact Plaintiff despite his presence on the National Do Not Call Registry, and Plaintiff's repeated attempts to demand that communications cease, Defendant engaged in abusive behavior.

69. Further, Defendant's deceptive practices of falsely representing that Plaintiff's cellular device had viruses was done so for the purpose of misleading Plaintiff into thinking that their product was necessary to correct a fabricated issue.

70. In violating the TCPA, Defendant further violated one of the specifically enumerated prongs of the IDCSA, I.C. 24-5-0.5-3(b)(19).

**Wherefore**, Plaintiff, **Thomas Roehrman** respectfully prays for judgment as follows:

a. All actual damages Plaintiff suffered (as provided under 47 U.S.C. § 227(c);

b. Statutory damages of $500.00 per text (as provided under 47 U.S.C. § 227(c)(5) and 47 CFR §64.1200(c);

c. Treble damages of $1,500.00 per text (as provided under 47 U.S.C. § 227(c)(5);

d. Additional statutory damages of $500.00 per unlawful text pursuant to § 227(c)(5)(B) for violation of Plaintiff's rights as it relates to the requirements of maintaining internal do not call lists under § 227(c)(5) and 47 CFR § 64.1200(d);

e. Additional treble damages of $1,500.00 per unlawful text pursuance to 47 U.S.C. § 227(c)(5)(c) for knowing and willful violations of Plaintiff's rights as it relates to the FCC requirement that telemarketers maintain meaningful internal do not call lists;

f. Awarding Plaintiff statutory damages of $500 per violation and $1,000 per willful violation under I.C. 24-5-0.5-4(a)(1) and 24-5-0.5-4(a)(2);

g. Awarding Plaintiff damages, in an amount to be determined at trial, as provided under I.C. 24-5-0.5-4(a)(1)(2);

h. Awarding Plaintiff costs and reasonable attorney fees as provided under I.C. 24-5-0.5-4(a);

i. Injunctive relief (as provided under 47 U.S.C. § 227(c); and

j. Any other relief this Honorable Court deems appropriate.

                                            Respectfully submitted,

                                            KIMMEL & SILVERMAN, P.C.

                                            By: */s/ Jacob U. Ginsburg*
                                            Jacob U. Ginsburg, Esq.
                                            30 E. Butler Ave.
                                            Ambler, PA 19002
                                            Phone: (267) 468-5374
                                            Facsimile: 877-788-2864
                                            Email: jginsburg@creditlaw.com
                                            teamkimmel@creditlaw.com

Dated: February 10, 2023